UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARTEZ SHADWICK, )
)
    Petitioner, )
)
vs. ) Case No. 4:07-CV-720 (CEJ)
)
DON ROPER, )
)
    Respondent. )

**MEMORANDUM**

This matter is before the Court on the petition of Martez Shadwick for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**     **Procedural Background**

On June 20, 2002, following a bench trial in the Circuit Court for the City of St. Louis, petitioner Martez Shadwick was found guilty of first degree murder, first degree robbery, and two counts of armed criminal action. On July 26, 2002, the trial court found petitioner to be a prior offender and sentenced him to two terms of life imprisonment and two terms of thirty years imprisonment, to be served concurrently.

The Missouri Court of Appeals affirmed petitioner's convictions and sentences in an unpublished opinion issued on January 27, 2004. State v. Shadwick, 130 S.W.3d 618 (Mo. Ct. App. 2004) (Resp. Ex. F). On July 23, 2004, petitioner filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15. On November 1, 2005, following an evidentiary hearing, the post-conviction court denied petitioner's motion. On September 26, 2006, the Missouri Court of Appeals summarily affirmed the denial of post-conviction relief. Shadwick v. State, 202 S.W.3d 39 (Mo. Ct. App. 2006) (Resp. Ex. N).

Petitioner filed his § 2254 petition with this Court on April 12, 2007, asserting the following claims for relief: (1) the State failed to submit sufficient evidence to establish guilt beyond a reasonable doubt; (2) petitioner received ineffective assistance of trial counsel in that counsel did not fully advise him of the risks of waiving his right to trial by jury; (3) the State impermissibly relied on contradictory theories in the prosecutions of petitioner and codefendant Antoine Bankhead; (4) petitioner is actually innocent of the offenses of conviction; (5) the trial court erred in admitting evidence of uncharged prior bad acts; (6) trial counsel failed to investigate a surveillance tape; (7) the prosecutor improperly argued that the perpetrators of the crime were gang members; and (8) the trial court failed to issue its factual findings beyond a reasonable doubt.

For the reasons set forth below, the Court concludes that petitioner has failed to establish that the decisions of the state court were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in State court proceedings. 28 U.S.C. § 2254(d).

## II. Background

Petitioner's convictions arise from the shooting death on July 30, 2000, of Demetrius Pascall in the parking lot of a Schnuck's grocery store in the City of St. Louis. According to testimony at trial, Mr. Pascall was sitting in his 1990 Lincoln Continental that was parked in a space on the lot and was talking with Norvette Brown and Aisha Perkins, whose car was parked in the adjoining space. Two men approached on foot, wearing black ball caps and gold or yellow bandanas pulled up over their mouths. One of the men had a gun. The two men ordered Mr. Pascall to get out of the car and removed jewelry from him. Mr. Pascall started to run from the

men and then was shot.  The two men got into the Lincoln and drove away.  Some of the witnesses testified that they saw a black SUV leave the lot at high speed at the same time.

The witnesses all agreed that the two men who confronted Mr. Pascall and took his car were African-American, and that one was lighter in complexion than the other.  The witnesses also agreed that they saw one gun.  The witnesses differed with respect to which of the two men possessed the gun and drove the car away.  Norvette Brown testified that the darker-skinned man, whom she identified in the courtroom as petitioner, held the gun and drove the car.  Her passenger, Aisha Perkins, by contrast, testified that the lighter-skinned man had the weapon.  Wardell Goudreau was exiting the store as the events unfolded; he testified that the darker-skinned man held the gun and drove the Lincoln away.  Mr. Goudreau was unable to identify petitioner either in a photo lineup or in the courtroom.

Tonya Otto and Jamaica Frazer were loading groceries into Ms. Otto's car when they saw three men scuffling with each other beside the Lincoln.  Ms. Otto testified that she heard a gunshot; Mr. Pascall then walked toward the grocery store where he collapsed; the two men got into the Lincoln and drove away.  At trial, Ms. Otto identified petitioner as the darker-skinned man who drove the Lincoln.  Ms. Otto testified that a black vehicle squealed out of the lot at the same time; Ms. Frazer testified that the second car was a Pathfinder.  Police officer Steven Strohmeyer testified that he saw both the Lincoln and a black SUV speeding away as he was responding to the grocery store.

Ella Bingham was leaving the grocery store with her son and grandchildren when she heard a gunshot.  She saw Mr. Pascall staggering and went to assist him; he fell into her arms.  Joseph Alexander, Ms. Bingham's son, testified that he saw two

black men hovering near the Lincoln, ordering Mr. Pascall to get out. Mr. Alexander testified that the two men took jewelry from Mr. Pascall. Mr. Pascall turned toward the store. Mr. Alexander heard a shot and saw Mr. Pascall grab his back. Mr. Pascall threw the keys toward the two men, who got into the Lincoln and drove away. Mr. Alexander could not say which man was driving.

A week before the shooting, Trisha Patton Rush drove her black Pathfinder into a gas station in the St. Louis area. She observed a red car holding four men pull into the station. A man she identified as petitioner got out of the car and approached her as she walked toward the cashier but she ignored him. While Ms. Rush was in line to pay for gasoline, petitioner and another man from the red car got into her Pathfinder and drove it away; the red car took off as well. Ms. Frazer identified a photograph of Ms. Rush's Pathfinder as the second vehicle she saw speeding away from the Schnuck's parking lot on the night of Mr. Pascall's murder.

On July 31, 2000, the day after the murder, St. Louis City police officers pursued the Pathfinder to a garage, where they arrested the driver, a man named Alvin Washington. A gun that was later determined to be the murder weapon was recovered from the garage. A bandana and cap matching the description of those worn by the shooter and his accomplice were seized from Mr. Washington. Also on July 31st, Mr. Pascall's car was found in an alley; it had been abandoned in the process of being stripped. A rag stuffed into the gas tank had been set on fire in an unsuccessful attempt to burn the car. Investigators recovered Alvin Washington's fingerprints from the Lincoln.

Additional facts will be included as necessary in discussion of petitioner's claims for relief.

III. <u>Legal Standard</u>

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively

unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

IV.     Discussion

Respondent contends that petitioner procedurally defaulted his claims for relief set forth in Claims 5, 7 and 8 by failing to preserve them for appellate review. Because petitioner is not entitled to relief on the merits of these claims, it is unnecessary to determine whether they are procedurally defaulted.

## Claim 1: Sufficiency of the Evidence

Petitioner contends that the State failed to adduce sufficient evidence to sustain his conviction, arguing, first, that the identification testimony was unreliable and, second, that there was insufficient evidence to support the element of premeditation required for a conviction of first-degree murder. The Missouri Court of Appeals rejected both of these claims.

The Due Process Clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998) (quoting In re Winship, 397 U.S. 358, 364 (1970)). In assessing the Missouri court's determination of whether there was sufficient evidence to support petitioner's convictions, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard recognizes that it is the province of the fact-finder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007).

Seven witnesses to the shooting testified at trial. Norvette Brown identified petitioner as the darker-skinned individual with the gun; Aisha Perkins testified that petitioner was the darker-skinned individual she saw that night but that the lighter-skinned man had the gun. Wardell Goudeau testified that the darker man had the gun and drove the Lincoln away. When asked at trial whether he saw that person in the courtroom, he responded, "I can't answer that. I didn't see [a] face." He had also been unable to identify anyone in a group of photographs presented by investigators after the shooting. Tonya Otto identified petitioner as the person who drove Mr. Pascall's car away. Ella Bingham identified a photograph of petitioner as one of the men who drove off in Mr. Pascall's car, but could not say whether he had been the shooter. Thus, more than one witness identified petitioner as one of the two men who confronted Mr. Pascall and took his vehicle, and one witness identified petitioner as the shooter. The Court agrees with the Missouri Court of Appeals that there was sufficient evidence from which a reasonable fact finder could have found, beyond a reasonable doubt, that petitioner shot Mr. Pascall.

Petitioner also asserts that there was not sufficient evidence to support a finding of "premeditation." He argues that, because Mr. Pascall was shot in the course of a robbery, the evidence establishes the elements of second-degree murder, at most. The elements of state law crimes are defined by state law. Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998). Under Missouri law, "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1, Mo. Rev. Stat. "'Deliberation' means cool reflection for any length of time no matter how brief." § 565.002(3). For purposes of first-degree murder, "[d]eliberation may be inferred from the circumstances surrounding the murder.'" State v. Miller, 220 S.W.3d 862, 868 (Mo. Ct. App. 2007).

"The deliberation necessary to support a conviction of first-degree murder need only be momentary; it is only necessary that the evidence show that the defendant considered taking another's life in a deliberate state of mind." Id. (citation omitted). Deliberation may be inferred from the fact that the defendant had the opportunity to terminate an attack after it began. State v. Cole, 71 S.W.3d 163, 169 (Mo. 2002). Petitioner approached Mr. Pascall with a gun in his hand, attempted to rob him, and then shot him as he fled. The Missouri Court of Appeals concluded that this evidence was sufficient to support a finding of deliberation. Petitioner has failed to establish that this decision is contrary to or an unreasonable application of existing Federal law or was based upon an unreasonable determination of the facts.

### Claims 2 and 6: Ineffective Assistance of Counsel

Petitioner contends that his trial counsel rendered ineffective assistance in that she failed to (1) fully advise him of the risks of waiving his right to trial by jury and (2) investigate a videotape from a surveillance camera at the Schnuck's parking lot.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In order to obtain relief under § 2254(d)(1), however, it is not enough to convince a federal habeas court that, in its independent judgment, the state-court

decision applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, petitioner must show that the Missouri courts applied Strickland to the facts of his case in an objectively unreasonable manner. Id.

Before accepting his waiver of his right to have his case decided by a jury, the trial court engaged petitioner in the following colloquy:

> Q: Mr. Shadwick . . . The Court has been given a memo, and I'm going to read it into the file. It says: ["]Defendant Martez Shadwick, after consultation with his attorney, . . . waives his right to a jury trial and agrees to submit all issues in the case to the court, whose finding shall have the force and effect of a verdict of a jury pursuant to Section 565.006 . .
>
> The Defendant also agrees that punishment is to be assessed and imposed by the Court if the Defendant is found to be guilty of any of the offenses charged."
>
> Do you understand the contents of this memo that has been filed with the Court?
>
> A: Yes, your Honor.
>
> Q: And did you sign your name here to this memo . . .?
>
> A: Yes, your Honor.
>
> Q: And is that what you want to do here today?
>
> A: Yes, your Honor.
>
> Q: . . . Did [your lawyer] explain to you that you have a right to have twelve people decide this case, if you'd like?
>
> A: Yes, your Honor.
>
> Q: And whose decision is it to waive the jury in this matter?
>
> A: Mine, your Honor.
>
> Q: After talking to [your lawyer]?
>
> A: Yes, your Honor.

Trial Transcript at 3-4 (Resp. Ex. B).

At the post-conviction hearing, petitioner testified that his case was initially set for trial in January of 2002 but proceedings broke off after jury selection. The case was reset for June 17, 2002. Petitioner testified that he and his lawyer did not discuss waiving his right to a jury trial until that morning. He testified that his lawyer told him that the trial judge "would let me go. She might just throw it out. I said you sure and she said yes. I say you sure. I asked about two times, she said yes. I say, okay. Then I got excited, I want a deal, let's go then." He testified that he thought he was going to be acquitted. Post-Conviction Transcript at 17-21 (Resp. Exh. I). Petitioner's trial counsel testified by deposition that she and petitioner had discussed waiving the right to jury trial as soon as they received the new trial setting. Counsel testified that during jury selection at the first trial setting, petitioner had been "very apprehensive about the way the jurors [were] reacting when they heard it was a murder in the Schnucks parking lot . . . so by the time it rolled around again for the trial, we had discussed the pros and cons of going with the bench trial and he chose a bench trial." Susan Gentle Dep. at 5 (Resp. Ex. J). She testified that she did not try to persuade him one way or the other. She further testified that petitioner had been concerned that "he didn't think he could hold up in front of a jury. . . [a]nd at that time he kind of wanted to take the witness stand. . . He was kind of emotional. He was very upset about the case. He thought he would fall apart." Id. at 7. She further testified that she had discussed the benefits of bench trials and jury trials with members of petitioner's family, who told her that they did not want to advise petitioner on this issue because they did not want him to blame them for the outcome. She denied that she promised him that the judge would either acquit him or give him a lower sentence if he waived his right to a jury trial.

The post-conviction motion court found that petitioner's testimony on this issue was not credible. The court concluded petitioner had made the decision to waive his right to jury trial after being properly advised by counsel of the advantages and disadvantages. Shadwick v. State, PCR No. 04P-4538, Findings of Fact and Conclusions of Law at 2 (Mo. Cir. Ct. Nov. 1, 2005) (Resp. Ex. H at 56). The Missouri Court of Appeals affirmed.

A state court's determination of a factual issue is entitled to a presumption of correctness which the petitioner has the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "The deference owed to the state trial court pursuant to § 2254(e)(1) includes deference to its credibility determinations. A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable based on the record." Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008). There is no basis for overturning the post-conviction court's credibility determination and, thus, petitioner cannot establish that counsel's performance was constitutionally deficient with respect to his waiver of his right to trial by jury.

Petitioner also claims that his counsel rendered ineffective assistance with respect to a surveillance tape from the parking lot. Counsel testified that she received a videotape from the State purporting to be from the night of the shooting. According to petitioner, the tape was accompanied by a memorandum indicating that it came from July 1, 2002;[1] the shooting occurred on July 30, 2000. Counsel testified that she reviewed the tape but found nothing of use to petitioner's case. She did not notice the date, and testified that she would have requested the proper tape had she realized that she might not have it. The post-conviction court denied petitioner's claim because

---

[1] At the deposition of trial counsel, the videotape was identified as being from July 1, 2000, not July 1, 2002, as petitioner claims in his petition.

he presented no evidence that the videotape from July 30, 2000, would have exonerated him. The Missouri Court of Appeals affirmed, additionally noting that petitioner failed to present evidence that the videotape in counsel's legal file was not a recording of the night the crimes occurred. In the absence of evidence regarding what the "correct" videotape would show, petitioner cannot establish that he was prejudiced by counsel's alleged failure to investigate whether she had been provided the correct videotape. Petitioner's second and sixth claims will be denied.

### Claim 3: State's Use of Contradictory Theories

The State separately prosecuted petitioner, Antoine Bankhead, and Alvin Washington for their roles in the robbery and death of Mr. Pascall; the State was represented at all three prosecutions by the same Assistant Circuit Attorney. On September 21, 2001, Washington pleaded guilty to second-degree murder, first-degree robbery, and two counts of armed criminal action. Shortly after petitioner's trial, Bankhead was found guilty by a jury of second-degree murder, first-degree robbery and two counts of armed criminal action.[2]

Petitioner claims that he is entitled to habeas corpus relief because the prosecutor proceeded against Bankhead on a felony murder charge while prosecuting him for first-degree murder. According to petitioner, the inconsistency arises because Bankhead's conviction depended upon a finding that Mr. Pascall's death occurred in the course of a robbery, while petitioner's conviction required a finding that the robbery

---

[2] At Washington's plea hearing, the prosecutor stated that Washington and petitioner approached Mr. Pascall and that petitioner shot Mr. Pascall. Similarly, at petitioner's trial, the prosecutor introduced evidence that Washington was the man who accompanied petitioner. Bankhead was granted a new trial because, while the prosecution claimed at all three prosecutions that petitioner Shadwick was the shooter and had one accomplice, the State presented conflicting theories regarding the identity of petitioner's accomplice. Bankhead v. State, 182 S.W.3d 253 (Mo. Ct. App. 2006). Petitioner presents a different claim of conflicting prosecution theories.

was completed and that petitioner separately formed the requisite intent to shoot Mr. Pascall.

Petitioner's claim is based upon the following portion of the prosecutor's closing argument:

> Why is it critical at the moment that the shot was fired the evidence clearly shows that Demetrius Pascall had separated or was separating himself from the Defendant and his partner? And the reaction to that was to shoot him. He was running away, he was going towards the Schnuck's market, he had left his car behind, and he left his keys behind.
>
> * * *
>
> And we know that because after he was shot, this Defendant or the other Defendant, neither one of them went up to his body to take anything from him. So whatever was going to be taken from Demetrius Pascall on that evening had been done. It was over. And they did take his car, but they didn't have to shoot him to take his car. He'd given up on the car, he was running away, and he was shot as he ran away.
>
> Your Honor, that's deliberation. That's not felony murder, because felony murder is a murder that occurs during the course of a robbery. What he got robbed of was personal items and his car, and he had already given those up.

Trial Tr. at 323.

As the Court of Appeals noted, "Bankhead and Washington were charged and convicted of second-degree murder while Movant was charged and convicted of first-degree murder, which required the State to prove all the elements of second-degree murder plus the additional element of deliberation." The post-conviction motion court concluded that petitioner was mischaracterizing the prosecutor's argument, which the court summarized as follows: the evidence established that the shooting was intentional, and that petitioner deliberated before shooting, because it was not necessary to shoot Mr. Pascall to steal his car. Petitioner cannot establish that the decisions by the state courts are contrary to or an unreasonable application of existing

Federal law or are based upon an unreasonable determination of the facts. Petitioner's third claim for relief will be denied.

### Claim 4: Actual Innocence

In his guilty plea, Alvin Washington admitted that he and petitioner "approachd Mr. Pascall and announced a robbery and took property from him, . . . [and] Martez Shadwick pulled out a gun and shot Mr. Pascall."[3] After petitioner's conviction, Washington executed an affidavit stating he had made false statements implicating petitioner and Bankhead, who played no active part in the murder of Demetrius Pascall. Washington further states, "Without my false statement there is little chance that a Jury would [have] been swayed into believing that <u>Martez Shadwick</u> and <u>Antione [sic] Bankhead</u> had any thing to do with this crime." Pet. Ex. 5 [Doc. 1-6] (emphasis in original). Petitioner contends that this affidavit establishes that he was wrongfully convicted.

Petitioner's argument ignores the fact that Washington offered no testimony at petitioner's trial and his conviction was based upon the testimony of eyewitnesses to the incident, as summarized above. Petitioner's fourth claim will be denied.

### Claim 5: Improper Admission of Uncharged Crimes

The trial court received evidence that petitioner participated in the theft of Trisha Patton Rush's Pathfinder a week before Mr. Pascall's murder. Evidence at trial established that the Pathfinder was present at the Schnuck's parking lot; Alvin Washington was arrested fleeing the Pathfinder. Petitioner contends that this evidence was improperly admitted. The Missouri Court of Appeals reviewed the claim for plain

---

[3] The prosecutor stated the facts that would be proved at trial; Washington acknowledged that the statement was true.

error and applied the presumption that the trial court, when sitting as fact-finder, will not rely on inadmissible evidence.

This Court is prohibited from reviewing matters of state evidentiary law. Sera v. Norris, 400 F.3d 538, 547 n.8 (8th Cir. 2005). The admission of evidence at a state trial will only form the basis for federal habeas relief when the evidentiary ruling "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994). In light of the record as a whole, petitioner cannot establish that the admission of this evidence was prejudicial. To the extent that petitioner claims that trial counsel was ineffective for failing to preserve this claim for appellate review, petitioner cannot establish that a properly preserved claim would have changed the outcome of his appeal. Petitioner's fifth claim for relief will be denied.

### Claim 7: Improper Argument

Petitioner contends that the prosecutor improperly argued that the perpetrators of the crime were gang members.

Improper remarks by a prosecutor can violate the Fourteenth Amendment if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637 (1974). This Court may grant habeas corpus relief only if the challenged argument was "so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." Weaver v. Bowersox, 438 F.3d 832, 840 (8th Cir. 2006) (citation omitted). Relief will be granted only upon a showing of a reasonable probability that the outcome would have been different but for the improper statement. Barnett v. Roper, 541 F.3d 804, 812-13 (8th Cir. 2008). Assuming without deciding that the references to gang membership were improper, the Court cannot say that they affected the outcome,

particularly as the judge is presumed to have ignored improper argument. Petitioner's seventh claim for relief will be denied.

### Claim 8: The Trial Court's Factual Findings

Petitioner contends that the trial court committed structural error by failing to issue factual findings beyond a reasonable doubt. At the conclusion of the trial, the court announced that it found the defendant guilty of each charge, without reciting the phrase "beyond a reasonable doubt." The trial court is presumed to know the appropriate standard of proof. Petitioner's eighth claim will be denied.

### V. Conclusion

Petitioner has failed to establish that the state courts' decisions on his claims were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in State court proceedings. 28 U.S.C. § 2254(d). Therefore he is not entitled to habeas corpus relief. Additionally, because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A separate judgment in accordance with this Memorandum will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 1st day of June, 2010.